UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FRED LICHTMACHER AS ADMINISTRATOR AD PROSEQUENDUM FOR THE ESTATE OF MUSA CETIN,
Plaintiff,
-against-

THE CITY OF NEW YORK,
LIEUTENANT MICHAEL STRANIERE Tax #933391
NYPD POLICE OFFICER ANDRES F. RIANO SHIELD # 2302
and UNIDENTIFIED POLICE OFFICERS OF THE CITY OF NEW YORK,
Defendants.
-----------------------------------------------------------------x

1:26-cv-03989-KPF
**AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff, FRED LICHTMACHER AS THE ADMINISTRATOR AD PROSEQUENDUM for the Estate of Musa Cetin by attorneys Fred Lichtmacher of the Law Office of Fred Lichtmacher P.C., and Gloria Keum Esq., complaining of the Defendants herein, respectfully allege as follows:

**JURISDICTION AND VENUE**

1. This action arises under federal law, more specifically pursuant to The 4th and 14th Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, pursuant to the New York City Administrative Code Section 8-802 et seq., as well as pursuant to the common law and statutory law of the State of New York.

2. Pursuant to 28 U.S.C. §1391 (a) (1) and (b) (1&2), venue is proper in the Southern District of New York, as events forming the basis of the Complaint occurred in this District and subject matter jurisdiction is conferred pursuant to 28 U.S.C. §§ 1331 and 1343 (a) (3 & 4), and Plaintiff's supplemental claims are properly before this Court pursuant to 28 U.S.C. § 1367.

**THE PARTIES**

3. FRED LICHTMACHER AS THE ADMINISTRATOR AD PROSEQUENDUM was duly appointed the Administrator Ad Prosequendum for the Estate of Musa Cetin on March 12, 2026 by the Hudson County New Jersey Surrogate is the Plaintiff herein on behalf of the sole distributee of the estate, Nevzat Cetin, who resides in Turkey.

4. Defendant THE CITY OF NEW YORK is a Municipal Corporation within New York State.

5. Pursuant to §431 of its Charter, the City of New York has established and maintains the New York City Department of Police (NYPD) as a constituent department or agency.

6. At all times relevant, THE CITY OF NEW YORK employed the individual defendants more fully identified below.

7. DEFENDANT LIEUTENANT MICHAEL STRANIERE Tax #933391 was at all times relevant a state actor acting under color of law.

8. DEFENDANT NYPD POLICE OFFICER ANDRES F RIANO SHIELD # 2302 was at all times relevant a state actor acting under color of law.

9. DEFENDANTS UNIDENTIFIED NYPD POLICE OFFICERS were at all times relevant acting as state actors acting under color of law.

**STATEMENT OF FACTS**

10. On August 29, 2025, at 7:44 pm in front of 3 Times Square New York, NY 10036 Musa Cetin, a then 29 year old immigrant from Turkey was arrested for a summons which had been dismissed previously, upon information and belief by Defendant POLICE OFFICER ANDRES F RIANO SHIELD # 2302 while in his pedicab.

11. DEFENDANT LIEUTENANT MICHAEL STRANIERE Tax #933391 witnessed and supervised the arrest and did nothing to stop the false arrest from taking place.

12. After he was handcuffed and brought to the NYPD Midtown Precinct South station house, a/k/a Manhattan South Transit District at 357 West 35th Street, Mr. Cetin was locked in a cell by himself and allowed to keep his thin jacket with him.

13. Mr. Cetin had a history of being verbally abused, being assaulted, systematically issued several legally insufficient tickets that ended up being dismissed, and being taunted by the NYPD who work the Midtown area.

14. Several of the Midtown officers have openly expressed their hatred of pedicab drivers including their hatred for Mr. Cetin and the Defendant officers have assaulted several pedicab drivers in the past, including Mr. Cetin.

15. Most of the pedicab drivers including Mr. Cetin, are Muslim.

16. On August 29, 2025, when Mr. Cetin was in custody at the police precinct, there was a camera pointed directly at Mr. Cetin's cell.

17. Video from August 29, 2025 of Mr. Cetin was shown but not provided to Ms. Gloria Keum Esq., as well as her colleague, a retired NYPD first grade detective and others.

18. In the video, Mr. Cetin was seen screaming out from his cell, waiving his arms and legs, and moving his overall body in an erratic manner.

19. Mr. Cetin banged the cell doors and walls with his legs and acted in a clearly, obviously emotionally disturbed, and deranged manner.

20. While Mr. Cetin was exhibiting this disturbing behavior, DEFENDANT POLICE OFFICER ANDRES F. RIANO walked over to and stood directly in front of Mr. Cetin's cell.

21. At this point the video shows, POLICE OFFICER ANDRES F. RIANO and Mr. Cetin engaged in a heated discussion.

22. After POLICE OFFICER ANDRES F. RIANO left the cell area, Mr. Cetin continued his erratic body movements and appeared to have a distressed and desperate look on his face.

23. Mr. Cetin repeatedly yelled out towards the direction from where POLICE OFFICER ANDRES F. RIANO walked in and Mr. Cetin repeatedly kicked the cell bars and cell walls.

24. POLICE OFFICER ANDRES F. RIANO left the cell area without engaging in any conduct to ensure that Mr. Cetin did not possess any objects that Mr. Cetin could use to harm himself or anyone else, including Mr. Cetin's aforementioned jacket.

25. POLICE OFFICER ANDRES F. RIANO, who entered Mr. Cetin's cell area, looked directly at Mr. Cetin and interacted with him at close proximity.

26. POLICE OFFICER ANDRES F. RIANO stood in front of and spoke to Mr. Cetin at length.

27. Upon information and belief, additional officers watched Mr. Cetin on video surveillance while Mr. Cetin remained in his cell, upon information and belief including DEFENDANT LIEUTENANT MICHAEL STRANIERE and the desk officer who is one of the DEFENDANT UNIDENTIFIED POLICE OFFICERS.

28. Officers acknowledged and physically responded to Mr. Cetin's screams when the officers walked into Mr. Cetin's cell area and left prior to his hanging himself without taking appropriate action to prevent him from harming himself.

29. These officers observed and interacted with Mr. Cetin until the moments leading to Mr. Cetin's death.

30. Yet, these officers did nothing to prevent Mr. Cetin's death.

31. The officers in the station house failed to check on Mr. Cetin's well-being, failed to restrain him, and failed to remove items from Mr. Cetin's cell which Mr. Cetin could and did use to harm himself.

32. Mr. Cetin displayed obvious signs of erratic and disturbing behavior up until the moment of his hanging himself, yet no actions were taken to protect Mr. Cetin's well being.

33. After speaking to the officer in the cell area, Mr. Cetin is seen on video praying desperately, prostrating himself on his cell floor and standing up, repeating these movements over and over again.

34. After speaking to the officer in the cell area, Mr. Cetin is seen on video slowly spinning and twisting his thin jacket it into the shape of a noose.

35. Mr. Cetin spun and twisted his jacket several times to ensure that it conformed into a shape that would effectively asphyxiate him.

36. Upon information and belief, on August 29, 2025, a desk officer and other members of the NYPD observed, personally and via video surveillance, Mr. Cetin acting erratically and then hanging himself yet no one came to assist Mr. Cetin in a timely manner when he was clearly mentally and emotionally stressed.

37. Mr. Cetin hanged himself with the jacket that the officers failed to remove from Mr. Cetin in his cell.

38. Video surveillance revealed that Mr. Cetin hanged from his noose for over eleven (11) minutes before any officers came to untie the jacket from Mr. Cetin's neck.

39. Mr. Cetin was taken to Bellevue Hospital in an unconscious state.

40. The NYPD left Mr. Cetin in a coma in his hospital bed with metal handcuffs and leg restraints.

41. Two (2) days later, Mr. Cetin was pronounced dead.

42. Upon information and belief, Mr. Cetin never regained consciousness after he hanged himself in his cell.

43. NYPD Patrol Guide Section §210-01(6)(a), entitled, “Prisoners General Procedure” states that this section’s purpose is “[t]o safeguard prisoners in police custody,” and it instructs:

(6) Assign police attendant to temporary duty within cellblock.

a. If a prisoner is placed in a cell alone because he/she threatens or fights with another prisoner(s), is causing disruption, or for any other reason, ensure that a member of the service will continue to monitor that prisoner closely

44. NYPD Patrol Guide Section §210-08(5)(i), entitled “GUIDELINES FOR PRISONER HOLDING PENS” states that this section’s purpose is “to ensure the integrity, control, and humane treatment of prisoners lodged in command/detective squad holding pens” and instructs officers to do the following:

> If a prisoner is placed in a cell alone because he/she threatens or fights with another prisoner(s), is causing disruption, or for any other reason, ensure that a member of the service will continue to monitor that prisoner closely.

45. Additionally, NYPD PG Section §210-04 entitled, “Prisoners Requiring Medical/Psychiatric Treatment” states that its purpose is “to obtain medical/psychiatric treatment for prisoners in police custody.” It defines:

> PRISONER REQUIRING PSYCHIATRIC TREATMENT-an emotionally disturbed prisoner, who has attempted suicide, is extremely violent, or exhibits other irrational behavior.

46. PG §210-04 instructs that when a prisoner in custody requires psychiatric treatment he must be removed to a hospital.

47. Members of the NYPD, including supervisors, were deliberately indifferent to Mr. Cetin's well-being and were negligent in that they failed to follow the mandates of PG §210.01(6), PG §210-08(5)(i) and PG §210-04.

48. The Defendants' deliberate indifference and negligent behavior led to Mr. Cetin's pain, suffering, and wrongful death.

49. Mr. Cetin carried with him at all times his recently deceased mother's ring, which was very important to him as it invoked her beloved memory.

50. On a prior occasion, officers took the ring from him which made him extremely upset and noticeably disturbed.

51. When Mr. Cetin was brought to Bellevue hospital, where he subsequently died on August 31, 2025, the ring was not with him, and to this date it has not been returned to his estate despite demands for the return of his belongings made by counsel.

52. Depriving Mr. Cetin and his estate of his mother's ring constitutes a conversion.

53. On prior occasions, Defendant officers taunted Mr. Cetin and threatened to turn him over to ICE which the officers knew would cause him to be extremely emotionally distressed.

54. Yet upon information and belief, on the date of Mr. Cetin's arrest, which led to his death, the officers again taunted Mr. Cetin and made these same threats of contacting ICE Enforcement.

55. These threats caused Mr. Cetin extreme anguish and distress, which elicited Mr. Cetin's reaction and the Defendants' actions were both objectively and subjectively outrageous, which was a contributing cause to Mr. Cetin taking his own life.

56. Mr. Cetin was falsely arrested numerous times by members of the NYPD and such arrests were frequently dismissed by the NYC Criminal Court which assessed these legally insufficient cases.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**VIOLATION OF THE PLAINTIFF'S RIGHTS PURSUANT TO**
**42 U.S.C.§ 1983 AND THE FOURTEENTH AND FOURTH AMENDMENTS**
**DUE TO THE INDIVIDUAL DEFENDANTS' DELIBERATE INDIFFERENCE TO**
**PLAINTIFF'S HEALTH AND SAFETY**

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

58. Plaintiff's rights have been violated under the Fourteenth and Fourth Amendments to theUnited States Constitution due to the Defendants' deliberate indifference to Plaintiff's Health and Safety resulting in his death, serious physical and emotional injuries.

59. Defendants were aware of the Plaintiff's aforementioned condition, his acting out, and the various indications they had of his being a danger to himself, which they ignored, violating their internal rules and the Fourteenth and Fourth Amendments causing his harms.

60. By reason of the aforesaid, the Plaintiff has been damaged and he is entitled to compensatory damages in a sum not less than TWENTY MILLION ($20,000,000.00) DOLLARS and punitive damages in an amount to be determined at trial and Plaintiff is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST THE CITY OF NEW YORK**
**PURSUANT TO N.Y.P.T.L. § 5-4.1 (1) et seq.**
**WRONGFUL DEATH**

61. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

62. The death of Plaintiff's Decedent was caused entirely by the negligence, recklessness and intentional behavior of the Defendants.

63. Defendant NYC by its agents, servants, and/or employees negligently, recklessly, and intentionally, ignored the obvious danger to Plaintiff's decedent's health and safety in failing to address his actions, as mandated by the Patrol Guide, which resulted in Plaintiff's Decedent's tragic death at the age of 29.

64. Pursuant to N.Y.E.P.T.L. § 5-4.1, due to Defendants' negligent, reckless and wrongful acts and the resulting death of Plaintiff's Decedent, Defendant NYC is liable to the Plaintiff for all lawful elements of recoverable damages, including but not limited to, loss of services for the Plaintiff, and the reasonable funeral expenses of the Plaintiff's Decedent, and all damages due to the effect of the wrongful act on the distributees together with interest from August 31, 2025.

65. By reason of the foregoing, Plaintiff has been damaged in a sum not less than TWENTY MILLION ($20,000,000.00) DOLLARS as well as all costs reasonably attributable to this cause of action.

**AS AND FOR A THIRD CAUSE OF ACTION
ON BEHALF OF PLAINTIFF NEGLIGENCE**

66. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

67. The aforesaid occurrence and the resultant injuries sustained by Plaintiff's Decedent were caused solely by reason of the negligent conduct of the Defendants and each of them by

and through their officers, agents, employees and/or subcontractors of the NYPD who were present when Plaintiff's Decedent showed signs of being an EDP and who ignored such signs which resulted in his harms and his death.

68. Defendant THE CITY OF NEW YORK is responsible via respondeat superior for the violation of NYPD Patrol Guide Sections §210-01 6, PG §210-08 5i, PG §210-04.

69. Members of the NYPD, including supervisors, were deliberately indifferent to Mr. Cetin's well being and negligent in that they failed to follow the mandates of PG §210.01 6, PG §210-08 5i and PG §210-04 and such deliberately indifferent and negligent behavior led to Mr. Cetin's pain, suffering, and wrongful death.

70. In particular, it is alleged that the aforesaid occurrence and the resultant injuries sustained by Plaintiff's Decedent were caused by and through the negligence, carelessness, recklessness, intentional conduct and wanton disregard on the part of the Defendants and each of them by and through their officers, agents, employees and/or subcontractors, and members of the NYPD.

71. Plaintiff's Decedent was in no part negligent in the happening of the aforesaid occurrences.

72. By reason of the negligence and recklessness of the defendants and each of them as aforesaid, Plaintiff's Decedent was caused to sustain serious injuries leading to his death as well as emotional harms.

73. By reason of the foregoing, Plaintiff has been damaged in a sum not less than TWENTY MILLION ($20,000,000.00) DOLLARS as well as all costs reasonably attributable to this cause of action.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST**

**THE CITY OF NEW YORK-CONVERSION**

74. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

75. THE CITY OF NEW YORK, is responsible for the conversion of Plaintiff's Decedent's property, in particular, but not exclusively, the Plaintiff's Decedents' mother's ring.

76. NYPD Officers with the intent to take possession of the aforementioned property, interfered with the owner's rights to retake custody, despite his right to possession of said property.

77. By reason of the aforesaid, THE CITY OF NEW YORK, is liable to the Plaintiff for the reasonable value of the property not returned to the Plaintiff's Decedent's estate.

**AS AND FOR A FIFTH CAUSE OF ACTION AGAINST THE DEFENDANTS FALSE ARRESTS IN VIOLATION OF 42U.S.C. §1983, THE FOURTH AMENDMENT, AS WELL AS PURSUANT TO NYC ADMINISTRATIVE CODE § 8-802 et seq.**

78. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully and at length set forth herein.

79. Plaintiff's Decedent was falsely arrested on numerous occasions by members of the NYPD.77. The following summonses were issued to Musa Cetin by members of the NYPD, and Mr. Cetin was arrested pursuant to said summonses and all of these summonses were dismissed by the Criminal Court; Summonses #'d 4453712104; 4459738283; 4457286180; 4455494635; 4457237740; 4459730727; 4459730700; 4459730713; and 4455930748.

80. As a result of these numerous false arrests the Plaintiff's Decedent's rights have been violated pursuant to the Fourth Amendment of the United States Constitution, as well as

pursuant to the NYC Administrative Code 8-802 et seq., due to his being falsely arrested by the Defendants.

81. The Plaintiff's Decedent was confined by Defendants; Defendants intended to confine the Plaintiff's Decedent; Plaintiff's Decedent was conscious of his confinement; and the Plaintiff's Decedent did not consent to the confinement which was not otherwise privileged.

82. As a direct consequence of Defendants' actions, the Plaintiff's Decedent was deprived of rights, privileges and immunities pursuant to the Fourth and Fourteenth Amendments of the United States Constitution, as well as pursuant to the NYC Administrative Code 8-802 et seq., and more particularly, his right to be free from arrest without probable cause was violated.

83. By reason of the aforesaid, the Plaintiff's Decedent has been damaged and he is entitled to compensatory damages in a sum not less than $1,000,000.00 (ONE MILLION) DOLLARS and punitive damages in an amount to be determined at trial and Plaintiff's Decedent is entitled to an award of attorneys' fees and costs pursuant to 42 USC §1988 as well as pursuant to New York City Administrative Code § 8-502(a & g).

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF FOR BIAS-BASED PROFILING IN VIOLATION OF NYC ADMINISTRATIVE CODE § 14-151 AND THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATE CONSTITUTION**

84. Plaintiff repeats and realleges each and every allegation contained in the preceding paragraphs as though fully set forth herein.

85. Defendants engaged in bias-based profiling of Plaintiff's Decedent in violation of New York City Administrative Code § 14-151 as well as violating the Equal Protection Clause of the Fourteenth Amendment via their treatment of Musa Cetin.

86. Specifically, Defendants, acting under color of state law and as members of the NYPD, relied on Plaintiffs' Decedent's actual or perceived race in initiating, prolonging, and escalating the arrests of Plaintiff's Decedent who was a practicing Muslim from Turkey.

87. As a direct and proximate result of Defendants' bias-based profiling, Plaintiff' Decedent suffered from being forced to go to court, being incarcerated, emotional distress, and other damages.

88. By reason of the aforesaid, the Plaintiff's Decedent havs been damaged and he is entitled to compensatory damages in a sum not to exceed $20,000,000.00 (TWENTY MILLION) DOLLARS and punitive damages in an amount to be determined by the trier of fact, and Plaintiff is entitled to an award of attorneys' fees and costs pursuant to New York City Administrative Code § 8-502(a & g).

**WHEREFORE**, Plaintiff demands judgment against the Defendants and each of them, as follows:

a. Declaratory relief finding that Plaintiff's rights under the United States Constitution and the NYC Administrative Code were violated;

b. Compensatory damages against all Defendants, jointly and severally, for the physical injuries, pain and suffering, emotional distress, and other damages Plaintiff sustained as a result of Defendants' unlawful actions;

c. Punitive damages against the individual Defendants for their intentional, reckless, and wanton conduct, in an amount sufficient to punish and deter such conduct in the future;

d. Reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988 and New York City Administrative Code §8-502(a & g);

e. Prejudgment and post-judgment interest on all damages awarded, as allowed by law; and

f. Such other and further relief as the Court may deem just and proper.

Dated: New York, New York
June 17, 2026

/s/

Fred Lichtmacher
The Law Office of Fred Lichtmacher P.C.
159 W. 25th Street, Suite 510
New York, NY 10001
(212) 922-9066
empirestatt@aol.com
and
Gloria Keum
gloria@justiceandrights.com
Of Counsel to the Law Office of Fred Lichtmacher P.C.

To New York City
c/o
Brian Christopher Francolla
New York City Law Department
100 Church Street Room 6-188
New York, NY 10007
(212) 356-3527
bfrancol@law.nyc.go

To DEFENDANT LIEUTENANT MICHAEL STRANIERE Tax #933391
Manhattan South Transit District
357 West 35th Street
New York, NY 10001-1701

To DEFENDANT NYPD POLICE OFFICER ANDRES F RIANO SHIELD # 2302
Police Service Area 8 Viper

2794 Randall Avenue
Bronx, NY 10465